NOT DESIGNATED FOR PUBLICATION

No. 119,604

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON M. BOWSER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed January 11, 2019.
Affirmed.

*Chris Biggs*, of Knopp and Biggs, P.A., of Manhattan, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

PER CURIAM: Aaron M. Bowser, convicted of possession of methamphetamine, argues in this direct appeal that there was no good reason for a law enforcement officer to stop the car in which he was riding and so the trial court erred when it failed to suppress the contraband evidence found in the car. After reviewing the record and considering his arguments, we do not agree with Bowser. We affirm his conviction.

1

*The parties submitted this case to the court on fact stipulations.*

Around 8:30 one evening in March 2015, a deputy sheriff and another officer noticed a vehicle with the driver's side taillight emitting a bright, white light, which was partially obscuring the red light. The officers stopped the car. The deputy told the driver, Rebecca Blackburn, the reason for the traffic stop. Two passengers were also seated in front: Dawn Nelson sat in the center, and Bowser sat to her right. Neither passenger was wearing a seatbelt. There was an outstanding warrant for Nelson's arrest, and she was arrested and removed from the scene by another officer. Blackburn and Bowser remained in the car.

The deputy returned to his patrol car to write tickets for the broken taillight and the seatbelt violations, and called for a K-9 unit to come to the scene. The K-9 unit arrived while the deputy was still writing the citations.

The police dog reacted to something in the vehicle, signaling the possible presence of drugs. The officers had Blackburn and Bowser step out and the deputy patted-down Bowser. The officers then searched the vehicle and found a black, plastic mirror-like object with white residue in the glove compartment directly in front of Bowser's seat, and a cut straw with white residue in the floorboard near the right passenger door around Bowser's feet. Based on his training and experience as a law enforcement officer, the deputy believed these objects were drug paraphernalia. Residue in the straw was positive for amphetamine according to a field test performed at the scene.

The deputy arrested Bowser and told him that he was going to perform a more extensive search. Before the deputy touched him, Bowser began moving his shirt. Bowser then turned around and stuck his arms out. At that point, the deputy heard something hit the ground. The deputy looked down and saw a small glass pipe that contained white and burnt residue. Residue in the glass pipe tested positive for methamphetamine.

The State charged Bowser with possession or control of methamphetamine and possession of drug paraphernalia.

Bowser moved to suppress the evidence. In the motion, he alleged, in part, that the traffic stop violated his Fourth Amendment rights. After a hearing, the district court determined that the officers had reasonable suspicion to stop the vehicle and investigate further. The court found they had probable cause for Bowser's arrest. The court denied Bowser's motion to suppress.

Bowser made an agreement with the State and entered a no contest plea to the charge of drug possession, and the court sentenced him to 20 months in prison. He later moved to withdraw his plea, which was denied by the court. He appealed to our court but voluntarily dismissed that appeal so that he could pursue a withdrawal of his plea in the district court. This time, the court granted Bowser's unopposed motion to withdraw his plea.

Next, the district court tried the case based on the parties' stipulated facts. The court found Bowser guilty of felony possession of methamphetamine. The district court then granted a downward durational departure and sentenced Bowser to 20 months in the custody of the Secretary of Corrections.

In this appeal, Bowser argues the search based on a taillight emanating white light violated the Fourth Amendment to the United States Constitution and the evidence obtained from the search must be suppressed. In his view, the officer had no reasonable suspicion based on objective facts to believe that the driver had committed a traffic infraction. Additionally, he contends the fact stipulation that the "clear glass pipe fell onto the ground," is not sufficient to support the court's finding him guilty. We will address the issues in that order.

3

*We see no problems with this traffic stop.*

In passing, we note the parties did not address Bowser's standing to object to the stop, so we will not deal with that issue.

We look, instead, at the merits of the court's decision. We are not concerned with any judicial fact-finding here as the court dealt with fact stipulations. This means that when the material facts supporting a trial court's decision on a motion to suppress evidence are not in dispute, as is the case here, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The facts here are not in dispute. The deputy saw a vehicle driving down the street at night with a cracked taillight. He saw white light emitting from the taillight. The white light was bright and he noticed it before seeing any other type of light. The deputy made a traffic stop based on what he perceived to be a possible traffic infraction.

The applicable statute, K.S.A. 8-1706(a), part of the Uniform Act Regulating Traffic Equipment of Vehicles, K.S.A. 8-1701 et seq., provides that a vehicle must be equipped with two taillights that emit visible, red light at a distance of 1,000 feet. The deputy first saw the pickup from the rear at a distance of about one-half of a block—less than 1,000 feet. At this distance, the deputy saw that the truck was emitting white and red light.

Bowser claims that this observation of white light did not provide him with a reasonable suspicion that the vehicle violated K.S.A. 8-1706. He argues that the statute neither disallows white light, nor exclusively allows red light. He argues that the statute should be strictly construed to allow for white light as long as red light is also emitting. See *State v. Sharp*, 305 Kan. 1076, 1082, 390 P.3d 542 (2017).

Bowser's argument does not persuade us. Here, the statute clearly and unambiguously requires that taillights specifically emit red light; it does not state that as long as red is one of any number of colors of light, then there is no violation. A statute should not be construed to yield unreasonable or absurd results. See *State v. Le*, 260 Kan. 845, 850, 926 P.2d 638 (1996).

Reasonable suspicion exists if at the time of the stop an officer has specific, articulable facts that criminal activity has occurred, is occurring, or is about to occur. See *State v. Coleman*, 292 Kan. 813, 817, 257 P.3d 320 (2011). The deputy specified his reason for stopping the truck was the broken taillight emitting white light. The law requires two functioning taillights, not one.

We must evaluate reasonable suspicion from the viewpoint of a trained law enforcement officer. *State v. Pollman*, 286 Kan. 881, 890, 190 P.3d 234 (2008). The deputy saw white light emanating from Blackburn's taillight. He testified that—in his experience—the white light would "drown out" the red light the further away the light is viewed from the source.

We cannot ignore this reasonable safety concern. A bright white light shining into the eyes of drivers approaching the rear of the truck could impair their vision and thus create a traffic hazard. Therefore, the white light emanating from the taillight provided the deputy with reasonable suspicion that a traffic infraction was occurring. The stop was reasonable. See *State v. Blackburn*, No. 115,956, 2017 WL 2212115, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. 988 (2017).

*The fact stipulations support the court's finding of guilt.*

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing the evidence in a light most favorable to the

prosecution, the appellate court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Here, Bowser narrows his attack to the ninth paragraph of the stipulations he made. He claims the stipulation of his lifting his shirt during the custodial search and the pipe then falling to the ground is insufficient to prove his guilt. He adds emphasis to the portion of the pipe falling to the ground, and then argues that the language of the stipulation "does not say that it fell 'under the defendant' or 'from his person' or any similar fact." Bowser argues there is no evidence to describe the precise details of how the pipe came to be on the ground or where it landed about his person, therefore his conviction must be overturned. In sum, to find him guilty the court engaged in "inference stacking."

Bowser relies on *State v. Banks*, 306 Kan. 854, 859-60, 397 P.3d 1195 (2017), for support. In *Banks,* the court found that where the State relies on inference stacking, i.e., where the State asks the jury to make a presumption based on other presumptions, it has not carried its burden to present sufficient evidence. But it looks to us that Bowser confuses inferences with circumstantial evidence. They are not identical concepts.

Bowser suggests that the State asked the district court here to stack inferences to find the requisite element of possession. To us, it appears the State is relying on circumstantial evidence, not inferences. The evidence was a pipe falling to the ground at the moment Bowser lifted his shirt during a custodial search. That scenario does not fit the proscribed inference-stacking paradigm. See *Banks*, 306 Kan. at 859. If the State establishes more than one circumstance to meet various elements of a criminal charge, it is not stacking inferences; it is corroborating inferences. 306 Kan. at 860.

6

Here, the sequence of events described in the stipulations describes the deputy's custodial search of Bowser, the deputy's request that Bowser lift his shirt, Bowser's compliance with that request, and "upon complying with that request," a clear glass pipe fell onto the ground, then collected by the deputy. As the State points out, the stipulations taken together establish beyond a reasonable doubt that Bowers possessed methamphetamine on the date specified.

Actually, Bowser's argument about paragraph nine is fundamentally a request to reweigh the evidence, which this court does not do. *Chandler*, 307 Kan. at 668. It was reasonable for the district court to find that Bowser was guilty beyond a reasonable doubt of possession of methamphetamine.

Affirmed.